**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA,<br><br>         Plaintiff,<br><br>   v.<br><br>KBE BUILDING CORPORATION,<br><br>         Defendant. | Civil Action No. 3:22-CV-677 |

## COMPLAINT FOR DECLARATORY JUDGMENT

The Plaintiff Selective Insurance Company of South Carolina ("Selective") files this Complaint for Declaratory Judgment seeking a declaration determining the scope and extent of its obligations to the Defendant KBE Building Corporation ("KBE") under insurance policies that Selective issued to Concrete Floors Company, LLC ("CFC").

### PARTIES

1.      The Plaintiff Selective is a corporation organized under the laws of the State of Indiana with its principal place of business located in Branchville, New Jersey.

2.      The Defendant KBE is a corporation organized under the laws of the State of Connecticut with its principal place of business in Farmington, Connecticut.

### JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). This action is between citizens of different states, and the amount in controversy exceeds $75,000, excluding interest and costs.

4.      This Court has the authority and jurisdiction to declare the parties' rights and obligations as requested herein pursuant to 28 U.S.C. § 2201.

5.      This Court has personal jurisdiction over the Defendant KBE because KBE is a corporation organized under the laws of the State of Connecticut and has its principal place of business here in Connecticut. Moreover, this matter concerns a dispute over the extent of Selective's obligations to KBE with respect to a lawsuit pending in the Superior Court of the State of Connecticut.

6.      This District is a proper venue for this action pursuant to 28 U.S.C. § 1391 because it is the District in which a defendant resides and it is the District where a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

7.      KBE has demanded that Selective defend and indemnify KBE against counterclaims asserted against it in a lawsuit that KBE initiated in Connecticut Superior Court. That lawsuit is styled *KBE Building Corporation v. Wakefern Food Corp., Travelers Casualty and Surety Company of America, and Concrete Floors Co., LLC*, Docket No. MMX-CV21-6030424-S and is pending in the Superior Court for the Judicial District of Middlesex County at Middletown (the "Underlying Lawsuit").

### The Construction Project

8.      The Underlying Lawsuit concerns the construction of a ShopRite grocery store at 24-51 Shunpike Road, in Cromwell, Connecticut (the "Project").

9.      Wakefern Food Corp. is the owner of the Project.

10.     Based upon information and belief, Wakefern contracted with KBE to construct the Project in or about 2018. Specifically, Wakefern and KBE entered into Purchase Order No.

-2-

317479, dated as of March 28, 2018, for the Contract Sum of $7,201,000, and a Master Contractor

Agreement, Wakefern Master Contractor Agreement No. 023, which included General Conditions

of the Master Agreement, (collectively, the "Wakefern-KBE Contract").

11.     Based upon information and belief, KBE entered into a subcontract agreement with

CFC under which CFC agreed to install the concrete floor at the Project (the "Subcontract"), which

was part of KBE's contractual obligations under the Wakefern-KBE Contract.

12.     Among other things, the Subcontract provides, in part:

> **6.     Indemnification.**
>
> a.  To the fullest extent permitted by applicable law, Subcontractor shall defend all claims or allegations and indemnify and hold harmless Contractor, Owner and Architect (including their respective affiliates, parents, subsidiaries, agents and employees), from and against all damages, loss and expense, including attorney's fees and costs, resulting from, relating to or arising out of Subcontractor's Work under this Agreement; however, Subcontractor's indemnity obligation shall not apply to the extent applicable law prohibits Subcontractor from indemnifying and holding harmless Contractor for that portion of damages or losses caused by the independent negligence of Contractor, its agents or employees. In any event, with respect to any claims against, the Contractor, Owner, or Architect (as the case may be), the Subcontractor agrees to defend, indemnify and hold harmless Contractor, Owner, and/or Architect until it is determined by a court or arbitrator that Contractor's, Owner's or Architect's sole negligence or willful misconduct (as the case may be) had proximately caused the alleged damage or loss.

13.     The Subcontract also provides, in part:

> **7.     Subcontractor's Insurance.**
>
> a.  Prior to the start of the Subcontractor's Work, the Subcontractor shall procure for the Subcontractor's Work and maintain in force Worker's Compensation Insurance, Employer's Liability Insurance, Comprehensive General Liability Insurance (CGL), Excess Liability Insurance (Excess) and/or Umbrella Insurance (Umbrella), Automobile Insurance and all insurance required by the Contract Documents, by a carrier(s) approved by the Contractor. This insurance shall include Contractual Liability insurance covering the Subcontractor's obligations under Article 6. The Contractor and the Owner(s) shall be named as additional insured on each of these policies except for Worker's Compensation. . . .

b.  CGL coverage shall be written on ISO Occurrence form CG 00 01 10 93 or a substitute form providing equivalent coverage and shall cover liability arising from premises, operations, independent contractors, products-completed operations, and personal and advertising injury. Contractor, Owner and all other parties required of the Contractor, shall be included as insureds on the CGL, using ISO Additional Insured Endorsement CG 20 10 11 85, or CG 20 10 10 93 **and** CG 20 37 10 01, or CG 20 33 10 01 **and** CG 20 37 10 01, or an endorsement providing equivalent coverage to the additional insureds. This insurance for the additional insureds shall be as broad as the coverage provided for the named insured subcontractor. Any and all Primary, Excess and Umbrella Insurance purchased by Subcontractor shall apply as primary and non-contributing insurance before any other insurance or self-insurance, including any deductible, maintained by, or provided to, the additional insured. In other words, any Primary, Excess and Umbrella insurance furnished by the Subcontractor in accordance with this Agreement, shall exhaust "vertically", and not share "horizontally" with any of Contractor's, Owner's or Architect's other insurance. Excess and Umbrella coverage shall be written "following form". All vehicles used by Subcontractor in performance of the Work shall be covered by the required Automobile Liability Insurance coverage.

14.     Based upon information and belief, CFC performed work at the Project under this Subcontract

15.     Connecticut General Statute § 52-572k provides:

**Section 52-572k. Hold harmless clause against public policy in certain construction contracts.**

(a) Any covenant, promise, agreement or understanding entered into in connection with or collateral to a contract or agreement relative to the construction, alteration, repair or maintenance of any building, structure or appurtenances thereto including moving, demolition and excavating connected therewith, that purports to indemnify or hold harmless the promisee against liability for damage arising out of bodily injury to persons or damage to property caused by or resulting from the negligence of such promisee, such promisee's agents or employees, is against public policy and void, provided this section shall not affect the validity of any insurance contract, workers' compensation agreement or other agreement issued by a licensed insurer.

(b) The provisions of this section shall apply to covenants, promises, agreements or understandings entered into on or after the thirtieth day next succeeding October 1, 1977.

16.    Connecticut General Statute § 52-572k applies to the Subcontract between KBE and CFC.

### The Underlying Lawsuit Concerning the Project

17.    A dispute arose between KBE and Wakefern over the parties' respective rights under the Wakefern-KBE Contract and KBE's work on the Project.

18.    KBE later instituted the Underlying Lawsuit against Wakefern.

19.    In its complaint in the Underlying Lawsuit, KBE contends that Wakefern breached the Wakefern-KBE Contract by failing to pay KBE for the full sum due under that contract. KBE asserts claims for breach of contract and unjust enrichment against Wakefern. Specifically, KBE seeks an additional $332,903.94 from Wakefern, which, KBE contends, is due and payable under the Contract.

20.    In that Underlying Lawsuit, KBE also seeks to recover against CFC, alleging that CFC materially breached the Subcontract by failing to install its work in accordance with requirements of the Subcontract. CFC tendered the claims against it to Selective and Selective agreed to defend CFC against Wakefern's Counterclaims subject to a reservation of rights. Selective has been defending CFC since then.

21.    Wakefern answered KBE's complaint and filed counterclaims against KBE (the "Counterclaims"). In its Counterclaims, Wakefern alleges, among other things, that KBE breached the Wakefern-KBE Contract and was negligent in its work on the Project.

22.    In its Counterclaims, Wakefern alleges that KBE and its subcontractors were responsible for installing walker ducts at the Project and, thereafter, KBE and CFC were responsible for installing the concrete floors at the Project. Wakefern's Counterclaims further alleged that KBE discovered problems with KBE's walker duct construction that required KBE to

cut into the concrete floor installed by CFC and replace portions of the walker duct. Wakefern claims that after this repair work, the Project's "concrete floor began to show signs of defective and faulty workmanship, including extensive spalling, cracking and separation, heaving, unevenness and unsightly deterioration."

23.     In its Counterclaims, Wakefern further alleges that despite having given KBE formal notice of the defective conditions with its work at the Project, "KBE refused to remedy the defects in accordance with the specifications and requirements of the [Wakefern-KBE Contract]."

24.     In its Counterclaims, Wakefern asserts two counts against KBE: (1) a breach of contract claim and (2) a negligence claim.

25.     Wakefern alleges in its Counterclaims that KBE is liable to Wakefern on account of work not performed by CFC.

26.     Among other things, Wakefern alleges in the negligence claim of its Counterclaims that KBE acted negligently "[b]y failing to install the walker ducts and trench-type underfloor raceway components, fittings, and accessories free from defects and in conformance with the requirements and specifications of the Contract."

27.     CFC did not install the walker ducts or trench-type underfloor raceway components of the Project.

28.     After Wakefern asserted its Counterclaims against KBE, KBE demanded that Selective defend and indemnify KBE against the Counterclaims under insurance policies that Selective issued to CFC. KBE claims to be an additional insured under the policies.

**The Selective Policies**

29.     Selective issued two Commercial Policy packages to CFC, bearing policy number S 2260041 and effective during two separate policy periods: (a) November 8, 2018 through

November 8, 2019, and (b) November 8, 2019 through November 8, 2020 (the "Selective Policies" or "Policies"). The Selective Policies include Commerical General Liability Coverage and Commercial Umbrella Coverage.

30.     CFC is the Named Insured under the Selective Policies.

31.     The Policies contain the same or substantially similar terms in all material respects.

32.     The 2018-2019 Policy's Insuring Agreement provides:

**SECTION I — COVERAGES**

**COVERAGE A — BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.      Insuring Agreement**

    **a.**      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        **(1)**      The amount we will pay for damages is limited as described in **Section III — Limits Of Insurance;** and

        **(2)**      Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

    No other obligation or liability to pay sums or per-form acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages **A** and **B.**

    **b.**      This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**      The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)**      The "bodily injury" or "property damage" occurs during the policies period; and

        **(3)**      Prior to the policies period, no insured listed under Paragraph **1.** of **Section II — Who Is An Insured** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such

a listed insured or authorized "employee" knew, prior to the policies period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policies period will be deemed to have been known prior to the policies period.

**c.** "Bodily injury" or "property damage" which occurs during the policies period and was not, prior to the policies period, known to have occurred by any insured listed under Paragraph **1.** of **Section II — Who Is An Insured** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policies period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of **Section II — Who Is An Insured** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

33. The Policies do not provide coverage to CFC for damage to or loss of CFC's own work.

34. The 2018-2019 Policy's Definitions define the following terms, among others:

**13.** **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

*     *     *

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

35.     The Policies also provide coverage for persons and entities that qualify as an Additional Insured as specified by the Policies.

36.     The Policies each contain a General Liability Blanket Additional Insured Form, The Contracting, Installation, Service and Repair General Liability Extended ElitePac® Endorsement. That endorsement of the 2018-2019 Policy states in relevant part:

> **Contracting, Installation, Service and Repair General Liability Extended ElitePac® Endorsement**
>
> *     *     *
>
> **THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.
>
> **1.      BLANKET ADDITIONAL INSUREDS**
>
> *     *     *
>
> **b.      Completed Operations**
>
> **SECTION II — WHO IS AN INSURED** is amended to include as an additional insured any person or organization you have agreed in a written contract, written agreement, or written permit to add as an additional insured on your policy, but only with respect to their liability arising out of "your work" performed under that contract, agreement, or permit and included in the "products-completed operations hazard" when that contract, agreement, or permit requires the additional insured be added with respect to liability arising out of "your work" performed under that contract, agreement, or permit and included in the "products-completed operations hazard". If the written contract, written agreement, or written permit does not require that the additional insured be added with respect to liability arising out of "your work" performed under that contract, agreement, or permit and included in the "products-completed operations hazard", then **SECTION II — WHO IS AN INSURED** is amended to include as an additional insured any person or organization you have agreed in a written contract, written agreement, or written permit to add as an additional insured on your policy, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by "your work" performed under that contract, agreement, or permit and included in the "products-completed operations hazard".

    **c.**    The coverages provided in Paragraphs **a.** and **b.** do not apply unless the written contract or written agreement has been executed (executed means signed by the named insured) or written permit issued prior to the "bodily injury", "property damage" or "personal and advertising injury".

*     *     *

    **e.**    **Conditions**

With respect to the insurance afforded to these additional insureds under **a. Ongoing Operations** and **b. Completed Operations** the following is added to Paragraph **4. Other Insurance, a. Primary Insurance** under **SECTION IV — COMMERCIAL GENERAL LIABILITY CONDITIONS:** This insurance is primary and will not contribute with any other insurance available to an additional insured under this coverage part provided that:

    **(1)**    The additional insured is a Named Insured under such other insurance.

    **(2)**    You have agreed in a written contract, written agreement or written permit to include that additional insured on your General Liability policy on a primary and/or noncontributory basis.

37. The Selective Policies contain another insurance provision. The 2018-2019 Policy states:

**4.**    **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

    **a.**    **Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

    **b.**    **Excess Insurance**

    **(1)**    This insurance is excess over:

    **(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

    **(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

-10-

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of **Section I — Cover-age A — Bodily Injury And Property Damage Liability.**

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c.    Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, which-ever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insur-ance to the total applicable limits of insurance of all insurers.

38.     By endorsement the 2018-2019 Policy further provides:

**Primary and Non-Contributory Provision**

The following is added to Paragraph **4. Other Insurance, b. Excess Insurance** under **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS:**

This insurance shall be excess with respect to any person or organization included as an additional insured under this policy, any other insurance that person or organization has shall be primary with respect to this insurance, unless:

**(1)**     The additional insured is a Named Insured under such other insurance;

**(2)**     You have agreed in a written contract, written agreement or written permit to include that additional insured on your General Liability policy on a primary and/or non-contributory basis; and

**(3)**     The written contract or written agreement has been executed (executed means signed by the named insured) or written permit issued prior to the "bodily injury" or "property damage" or "personal and advertising injury".

39.     The Selective Policies do not provide coverage to CFC for damage or loss to CFC's own work.

40.     The Selective Policies do not provide coverage to KBE for damage or loss to CFC's own work.

41.     Under the terms of the Selective Policies, KBE is entitled to coverage as an Additional Insured: (a) only if CFC entered into a written contract with KBE under which CFC agreed to add KBE as an Additional Insured to CFC's Policies, (b) only with respect to claims asserted by Wakefern alleging liability for "property damage" to property other than CFC's own work, and (c) only if that damage to other property was caused, in whole or in part, by CFC's work performed under the Subcontract.

42.     KBE is not entitled to any coverage under the Selective Policies as an Additional Insured or otherwise for any liability, loss, or damage not caused, in whole or in part, by CFC's work performed under the Subcontract.

43.     The Selective Policies do not provide coverage to KBE against claims asserting liability for property damage caused by KBE's own independent negligence.

44.     The Selective Policies do not provide coverage to KBE against claims asserting liability for property damage caused by the negligence of KBE's other subcontractors.

**KBE's Tender to Selective, Selective's Defense Subject to a Reservation of Rights, and the Parties Dispute Over Coverage**

45.     KBE tendered Wakefern's Counterclaims to Selective seeking coverage under the Selective Policies as an Additional Insured. KBE demanded that Selective defend and indemnify KBE against all of the claims asserted in Wakefern's Counterclaims. KBE additionally demanded that Selective pay for the legal fees necessary for KBE to pursue its original, affirmative claims against Wakefern.

46.     Selective investigated KBE's tender and agreed to defend KBE against Wakefern's Counterclaims subject to a reservation of rights.

47.     Among other things, Selective reserved the right to deny coverage for indemnification of KBE against any settlement or judgment in the Underlying Lawsuit. Selective explained in its reservation of rights letter that Selective was only obligated to defend and indemnify KBE to the extent that Wakefern sought to impose liability on KBE on account of "property damage" to property other than CFC's work and which "property damage" was caused, in whole or in part, by CFC's work on the Project

48.     Selective has since been providing a defense to KBE against Wakefern's Counterclaims in the Underlying Lawsuit.

49.     Selective, however, denied KBE's request that Selective fund KBE's affirmative claims against Wakefern asserted in KBE's complaint in the Underlying Lawsuit. KBE has been paying for its legal fees and costs associated with pursuing those claims.

### COUNT I – DECLARATORY JUDGMENT
### (Duty to Defend – KBE's Legal Fees Suing Wakefern)

50.     Selective incorporates by reference each of the preceding paragraphs 1 through 49 as if fully set forth herein.

51.     KBE initiated the Underlying Lawsuit against Wakefern seeking to recover sums that KBE contends it is owed for the work it performed on the project.

52.     Wakefern has asserted Counterclaims against KBE in the Underlying Lawsuit.

53.     Subject to its reservation of rights, Selective has agreed to provide, and has been providing, a defense for KBE against Wakefern's Counterclaims.

54.     Selective has denied any obligation to fund KBE's pursuit of its affirmative claims asserted in its complaint against Wakefern in the Underlying Lawsuit.

55.     The Selective Policies provide that Selective "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies" and that Selective "will have the right and duty to defend the insured against any 'suit' seeking those damages."

56.     KBE's claims against Wakefern as asserted in its complaint in the Underlying Lawsuit are not a "suit" seeking to recover damages because of "bodily injury" or "property damage" to which the Selective Policies apply.

57.     KBE maintains, however, that, under the Selective Policies, Selective is obligated to pay for KBE's legal fees and costs in pursuing its claims against Wakefern in the Underlying Lawsuit.

-14-

58.     An actual and justiciable controversy exists between Selective and KBE concerning their respective rights and liabilities under the Selective Policies with respect to whether Selective has an obligation to pay for KBE's legal fees and costs in pursuing its claims against Wakefern in the Underlying Lawsuit.

59.     Selective is entitled to a judgment declaring that the Selective Policies' terms do not obligate Selective to pay for KBE's legal fees and costs in pursuing its claims against Wakefern in the Underlying Lawsuit.

### COUNT II – DECLARATORY JUDGMENT
### (Duty to Indemnify – Damage or Deficiencies in CFC's Own Work)

60.     Selective incorporates by reference each of the preceding paragraphs 1 through 49 as if fully set forth herein.

61.     Wakefern's Counterclaims against KBE in the Underlying Lawsuit seek to recover for defects and deficiencies in CFC's own work. Among other things, Wakefern alleges that the concrete floor installed by CFC does not conform with the specifications and requirements of the Wakefern-KBE Contract and otherwise suffers from defects in workmanship.

62.     Under the terms of the Selective Policies, and subject to all of those terms, Selective is only obligated to indemnify an insured for legal liability on account of "property damage" caused by an "occurrence."

63.     Under the terms of the Selective Policies, defects and deficiencies of CFC's own work do not constitute "property damage" caused by an "occurrence" and, in any event, the Selective Policies otherwise preclude coverage for such liability.

64.     Accordingly, Selective has reserved the right to deny coverage for that part of any settlement or judgment on Wakefern's Counterclaims on account of legal liability arising from defects or deficiencies in the work that CFC contracted to provide and deliver as part of the Project.

-15-

65.     KBE, however, maintains that Selective is obligated to indemnify KBE for any legal liability arising from defects or deficiencies in the work that CFC contracted to provide and deliver as part of the Project.

66.     An actual and justiciable controversy exists between Selective and KBE concerning their respective rights and liabilities under the Selective Policies with respect to whether Selective has an obligation to indemnify KBE for any legal liability that KBE might incur on account of any defects or deficiencies in the work that CFC contracted to provide and deliver as part of the Project.

67.     Selective is entitled to a judgment declaring that the Selective Policies' terms do not obligate Selective to indemnify KBE for any legal liability that KBE might incur on account of any defects or deficiencies in the work that CFC contracted to provide and deliver as part of the Project.

## COUNT III – DECLARATORY JUDGMENT
**(Duty to Indemnify – Legal Liability For Property Damage Not Caused, In Whole or In Part, By CFC's Work)**

68.     Selective incorporates by reference each of the preceding paragraphs 1 through 49 as if fully set forth herein.

69.     Wakefern's Counterclaims against KBE in the Underlying Lawsuit seek to recover for defects and deficiencies in work not performed by CFC and for alleged property damage not caused, in whole or in part, by CFC's work. Among other things, Wakefern alleges in the negligence claim of its Counterclaims that KBE acted negligently "[b]y failing to install the walker ducts and trench-type underfloor raceway components, fittings, and accessories free from defects and in conformance with the requirements and specifications of the Contract."

70.     Under the terms of the Selective Policies, and subject to all of those terms, KBE only qualifies as an Additional Insured under the Policies: (a) for liability arising from damage to

property other than CFC's own work, and (b) only to the extent that the damage to other property was caused, in whole or in part, by CFC's work on the Project.

71.     Accordingly, Selective has reserved the right to deny coverage for that part of any settlement or judgment on Wakefern's Counterclaims on account of legal liability arising from damage to other property that was not caused, in whole or in part, by CFC's work on the Project.

72.     KBE, however, maintains that Selective is obligated to indemnify KBE for any legal liability arising from any property damage regardless of who caused that damage, even for property damage caused solely by KBE's own negligence.

73.     An actual and justiciable controversy exists between Selective and KBE concerning their respective rights and liabilities under the Selective Policies with respect to whether Selective has an obligation to indemnify KBE for any legal liability that KBE might incur on account of property damage not caused, in whole or in part, by the work of CFC on the Project.

74.     Selective is entitled to a judgment declaring that the Selective Policies' terms do not obligate Selective to indemnify KBE for any legal liability that KBE might incur on account of property damage not caused, in whole or in part, by the work of CFC on the Project.

## COUNT IV – DECLARATORY JUDGMENT
### (Alternatively As To Duty to Defend and to Indemnify – Other Insurance)

75.     Selective incorporates by reference each of the preceding paragraphs 1 through 49 as if fully set forth herein.

76.     Wakefern's Counterclaims against KBE in the Underlying Lawsuit seek to recover for defects and deficiencies in work not performed by CFC and for alleged property damage not caused, in whole or in part, by CFC's work.

-17-

77.     Under the terms of the Selective Policies, and subject to all of those terms, the Selective Policies are not primary with respect to any liabilities asserted against KBE that are not on account of alleged property damage caused, in whole or in part, by CFC's work.

78.     KBE's own insurers are obligated to defend and indemnify KBE against any claims seeking coverage for loss arising out of KBE's independent negligence.

79.     Selective does not have any obligation to defend or indemnify KBE for loss or liability arising out of KBE's own independent negligence, but alternatively, to the extent that Selective had any such obligation, Selective's obligations would be excess to any insurance provided directly to KBE.

80.     An actual and justiciable controversy exists between Selective and KBE concerning their respective rights and liabilities under the Selective Policies with respect to whether Selective has an obligation to indemnify KBE for any legal liability that KBE might incur on account of property damage not caused, in whole or in part, by the work of CFC on the Project.

81.     Selective is entitled to a judgment declaring that the Selective Policies' terms do not obligate Selective to indemnify KBE for any legal liability that KBE might incur on account of property damage not caused, in whole or in part, by the work of CFC on the Project.

## PRAYER FOR RELIEF

WHEREFORE, for the reasons set forth above, the Plaintiff Selective Insurance Company of South Carolina prays for judgment as follows:

      A.    With respect to Count I, a declaration that Selective is not obligated under the Selective Policies, or otherwise, to pay for KBE's legal fees and costs in pursuing its claims against Wakefern in the Underlying Lawsuit;

      B.    With respect to Count II, a declaration that Selective is not obligated under the Selective Policies, or otherwise, to indemnify KBE for any legal liability

that KBE might incur on account of any defects, deficiencies, or faulty workmanship in the work that CFC contracted to provide and deliver as part of the Project;

C.    With respect to Count III, a declaration that Selective is not obligated under the Selective Policies, or otherwise, to indemnify KBE for any legal liability that KBE might incur on account of property damage not caused, in whole or in part, by the work of CFC on the Project;

D.    Alternatively, with respect to Count IV, a declaration that Selective is not obligated to defend or indemnify KBE for its own independent negligence, but, to the extent Selective had such obligation, such obligation is excess to any other insurance available to KBE;

E.    With respect to all Counts, a judgment awarding Selective its costs in this action; and

F.    With respect to all Counts, a judgment awarding Selective such other relief as this Court deems just and proper.

Respectfully submitted,

SELECTIVE INSURANCE COMPANY
OF SOUTH CAROLINA


By_____
    Joseph K. Scully
    Day Pitney LLP
    242 Trumbull Street
    Hartford, CT 06103
    Tel.: (860) 275-0135
    Fax: (860) 881-2478
    jkscully@daypitney.com

Dated: May 18, 2022

-19-