## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA,<br><br>Plaintiff,<br><br>v.<br><br>KBE BUILDING CORPORATION,<br><br>Defendant. | Civil Action No. 3:22-CV-00677 (AVC) |

## FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

The Plaintiff Selective Insurance Company of South Carolina ("Selective") files this First Amended Complaint for Declaratory Judgment seeking a declaration determining the scope and extent of its obligations to the Defendant KBE Building Corporation ("KBE") under insurance policies that Selective issued to Concrete Floors Company, LLC ("CFC").

### PARTIES

1.      The Plaintiff Selective is a corporation organized under the laws of the State of Indiana with its principal place of business located in Branchville, New Jersey.

2.      The Defendant KBE is a corporation organized under the laws of the State of Connecticut with its principal place of business in Farmington, Connecticut.

### JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). This action is between citizens of different states, and the amount in controversy exceeds $75,000, excluding interest and costs.

4.      This Court has the authority and jurisdiction to declare the parties' rights and obligations as requested herein pursuant to 28 U.S.C. § 2201.

5.      This Court has personal jurisdiction over the Defendant KBE because KBE is a corporation organized under the laws of the State of Connecticut and has its principal place of business here in Connecticut. Moreover, this matter concerns a dispute over the extent of Selective's obligations to KBE with respect to a lawsuit pending in the Superior Court of the State of Connecticut.

6.      This District is a proper venue for this action pursuant to 28 U.S.C. § 1391 because it is the District in which a defendant resides and it is the District where a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

7.      KBE has demanded that Selective defend and indemnify KBE against counterclaims asserted against it in a lawsuit that KBE initiated in Connecticut Superior Court. The lawsuit is styled *KBE Building Corporation v. Wakefern Food Corp., Travelers Casualty and Surety Company of America, and Concrete Floors Co., LLC*, Docket No. MMX-CV21-6030424-S and is pending in the Superior Court for the Judicial District of Middlesex County at Middletown (the "Underlying Lawsuit"). KBE has further demanded that Selective pay for the legal fees that KBE incurs in pursuing its affirmative claims against Wakefern in that Underlying Lawsuit.

## The Construction Project

8.      The Underlying Lawsuit concerns the construction of a ShopRite grocery store at 24-51 Shunpike Road, in Cromwell, Connecticut (the "Project").

9.      Wakefern Food Corp. ("Wakefern") is the owner of the Project.

10.     Based upon information and belief, Wakefern contracted with KBE to construct the Project in or about 2018. Specifically, Wakefern and KBE entered into Purchase Order No. 317479, dated as of March 28, 2018, for the Contract Sum of $7,201,000, and a Master Contractor

Agreement, Wakefern Master Contractor Agreement No. 023, which included General Conditions of the Master Agreement (collectively, the "Wakefern-KBE Contract").

11.    Based upon information and belief, KBE entered into a subcontract agreement with CFC under which CFC agreed to furnish and install the concrete slab and floor, among other associated work, at the Project (the "Subcontract"), which was part of KBE's contractual obligations under the Wakefern-KBE Contract.

12.    Among other things, the Subcontract provides, in part:

> **6.      Indemnification.**
>
> a.  To the fullest extent permitted by applicable law, Subcontractor shall defend all claims or allegations and indemnify and hold harmless Contractor, Owner and Architect (including their respective affiliates, parents, subsidiaries, agents and employees), from and against all damages, loss and expense, including attorney's fees and costs, resulting from, relating to or arising out of Subcontractor's Work under this Agreement; however, Subcontractor's indemnity obligation shall not apply to the extent applicable law prohibits Subcontractor from indemnifying and holding harmless Contractor for that portion of damages or losses caused by the independent negligence of Contractor, its agents or employees. In any event, with respect to any claims against, the Contractor, Owner, or Architect (as the case may be), the Subcontractor agrees to defend, indemnify and hold harmless Contractor, Owner, and/or Architect until it is determined by a court or arbitrator that Contractor's, Owner's or Architect's sole negligence or willful misconduct (as the case may be) had proximately caused the alleged damage or loss.

13.    The Subcontract also provides, in part:

> **7.      Subcontractor's Insurance.**
>
> a.  Prior to the start of the Subcontractor's Work, the Subcontractor shall procure for the Subcontractor's Work and maintain in force Worker's Compensation Insurance, Employer's Liability Insurance, Comprehensive General Liability Insurance (CGL), Excess Liability Insurance (Excess) and/or Umbrella Insurance (Umbrella), Automobile Insurance and all insurance required by the Contract Documents, by a carrier(s) approved by the Contractor. This insurance shall include Contractual Liability insurance covering the Subcontractor's obligations under Article 6. The Contractor and the Owner(s) shall be named as additional insured on each of these policies except for Worker's Compensation. . . .

b.  CGL coverage shall be written on ISO Occurrence form CG 00 01 10 93 or a substitute form providing equivalent coverage and shall cover liability arising from premises, operations, independent contractors, products-completed operations, and personal and advertising injury. Contractor, Owner and all other parties required of the Contractor, shall be included as insureds on the CGL, using ISO Additional Insured Endorsement CG 20 10 11 85, or CG 20 10 10 93 **and** CG 20 37 10 01, or CG 20 33 10 01 **and** CG 20 37 10 01, or an endorsement providing equivalent coverage to the additional insureds. This insurance for the additional insureds shall be as broad as the coverage provided for the named insured subcontractor. Any and all Primary, Excess and Umbrella Insurance purchased by Subcontractor shall apply as primary and non-contributing insurance before any other insurance or self-insurance, including any deductible, maintained by, or provided to, the additional insured. In other words, any Primary, Excess and Umbrella insurance furnished by the Subcontractor in accordance with this Agreement, shall exhaust "vertically", and not share "horizontally" with any of Contractor's, Owner's or Architect's other insurance. Excess and Umbrella coverage shall be written "following form". All vehicles used by Subcontractor in performance of the Work shall be covered by the required Automobile Liability Insurance coverage.

14.    Based upon information and belief, CFC performed work at the Project under this Subcontract.

15.    Connecticut General Statute § 52-572k provides:

**Section 52-572k. Hold harmless clause against public policy in certain construction contracts.**

(a) Any covenant, promise, agreement or understanding entered into in connection with or collateral to a contract or agreement relative to the construction, alteration, repair or maintenance of any building, structure or appurtenances thereto including moving, demolition and excavating connected therewith, that purports to indemnify or hold harmless the promisee against liability for damage arising out of bodily injury to persons or damage to property caused by or resulting from the negligence of such promisee, such promisee's agents or employees, is against public policy and void, provided this section shall not affect the validity of any insurance contract, workers' compensation agreement or other agreement issued by a licensed insurer.

(b) The provisions of this section shall apply to covenants, promises, agreements or understandings entered into on or after the thirtieth day next succeeding October 1, 1977.

16.    Connecticut General Statute § 52-572k applies to the Subcontract between KBE and CFC.

## The Underlying Lawsuit Concerning the Project

17.    A dispute arose between KBE and Wakefern over the parties' respective rights under the Wakefern-KBE Contract and KBE's work on the Project.

18.    KBE later brought the Underlying Lawsuit against Wakefern.

19.    In its complaint in the Underlying Lawsuit, KBE contends that Wakefern breached the Wakefern-KBE Contract by failing to pay KBE the full sum due under that Contract. KBE asserts claims for breach of contract and unjust enrichment against Wakefern. Specifically, KBE seeks an additional $332,903.94 from Wakefern, which, KBE contends, is due and payable under the Wakefern-KBE Contract.

20.    In the Underlying Lawsuit, KBE also seeks to recover against CFC, alleging that CFC materially breached the Subcontract by failing to perform its work in accordance with requirements of the Subcontract. Among other things, KBE contends that the concrete floor is deficient, defective, and fails to meet the requirements of the Subcontract. CFC tendered the claims against it to Selective and Selective agreed to defend CFC subject to a reservation of rights. Selective has been defending CFC since then.

21.    Wakefern answered KBE's complaint and filed counterclaims against KBE that Wakefern later amended (the "Counterclaims"). In its Counterclaims, Wakefern alleges, among other things, that KBE breached the Wakefern-KBE Contract and was negligent in its work on the Project. Among other things, Wakefern alleges that KBE was responsible for installing the concrete floor according to the terms of the Wakefern-KBE Contract, but that the concrete floor was defective, deficient, and otherwise did not meet the specifications of that Contract.

22.     In its Counterclaims, Wakefern also alleges that KBE and its subcontractors were responsible for installing walker ducts at the Project and, thereafter, KBE and CFC were responsible for installing the concrete floors at the Project. Wakefern's Counterclaims further allege that Wakefern discovered problems with KBE's walker duct construction in April 2019 that required KBE to cut into the concrete floor installed by CFC, replace portions of the walker ducts, re-pour the portion of the concrete slab that had been removed to access the walker ducts, and then patch and re-polish this re-poured portion of the slab. Wakefern claims that after this repair work, the Project's "concrete floor began to show signs of defective and faulty workmanship, including extensive spalling, cracking and separation, heaving, unevenness and unsightly discoloration."

23.     In its Counterclaims, Wakefern alleges that by September 2019, it had notified KBE of the defects in the concrete floor and informed KBE that it was rejecting the concrete floor as failing to conform to the Wakefern-KBE Contract.

24.     In its Counterclaims, Wakefern further alleges that despite having given KBE notice of the defective conditions in its work at the Project, "[d]eterioration of the concrete floor continued thereafter without correction by KBE" and that "KBE refused to remedy the defects in accordance with the specifications and requirements of the [Wakefern-KBE Contract]."

25.     In its Counterclaims, Wakefern asserts two causes of action against KBE: (1) a breach of contract claim, and (2) a negligence claim.

26.     Wakefern alleges in its Counterclaims that KBE is liable to Wakefern on account of work not performed by CFC and for damage not arising out of CFC's work.

27.     After Wakefern asserted its Counterclaims against KBE, KBE demanded that Selective defend and indemnify KBE against the Counterclaims under insurance policies that Selective issued to CFC. KBE claims to be an additional insured under the policies. KBE further

demanded that Selective pay for its legal fees and expenses incurred in pursuing the claims asserted in its underlying complaint against Wakefern.

### The Selective Policies

28.     Selective issued two Commercial Policy packages to CFC, bearing policy number S 2260041 and in effect during two consecutive annual policy periods: (a) November 8, 2018 through November 8, 2019 (the "2018 Policy"), and (b) November 8, 2019 through November 8, 2020 (the "2019 Policy") (collectively the "Selective Policies" or "Policies"). The Selective Policies include Commercial General Liability ("CGL") coverage part and Commercial Umbrella coverage part.

29.     CFC is the Named Insured under the Selective Policies.

30.     The Policies contain the same or substantially similar terms in all material respects.

31.     The Policies' Commercial General Liability Insuring Agreements provide:

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under **Section II – Who Is An Insured.**

Other words and phrases that appear in quotation marks have special meaning. Refer to **Section V – Definitions**.

**SECTION I — COVERAGES**

**COVERAGE A — BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in **Section III — Limits Of Insurance;** and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policies period; and

**(3)** Prior to the policies period, no insured listed under Paragraph **1.** of **Section II — Who Is An Insured** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policies period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policies period will be deemed to have been known prior to the policies period.

**c.** "Bodily injury" or "property damage" which occurs during the policies period and was not, prior to the policies period, known to have occurred by any insured listed under Paragraph **1.** of **Section II — Who Is An Insured** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policies period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of **Section II — Who Is An Insured** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

  **e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

32. The Policies' CGL coverage part provides limited additional coverage under the Supplementary Payments subsection, including the following coverage for costs taxed against an insured:

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

 **1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

*  *  *

  **e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

33. The Policies' CGL coverage defines the following terms, among others:

 **8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

  **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

  **b.** You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

 **9.** "Insured contract" means:

*  *  *

  **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

*  *  *

-9-

13.     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*          \*          \*

16.     "Products-completed operations hazard":

a.     Includes all "bodily injury" and "property damage" occurring away from the premises you own or rent and arising out of "your product" or "your work," except:

(1)     Products that are still in your physical possession; or

(2)     Work that has not yet been completed or abandoned.

\*          \*          \*

17.     "Property damage" means:

a.     Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.     Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\*          \*          \*

21.     "Your product":

a.     Means:

(1)     Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a)     You;

\*          \*          \*

22.     "Your work":

a.     Means:

(1)     Work or operations performed by your or an your behalf; and

(2)     Materials, parts or equipment furnished in connection with such work or operations.

34.     The Policies also provide coverage for a person or entity that qualifies as an additional insured as specified by the Policies.

-10-

35.     The Policies' CGL coverage each contain a General Liability Blanket Additional

Insured Form, The Contracting, Installation, Service and Repair General Liability Extended

ElitePac® Endorsement (the "Blanket Additional Insured Endorsement"). That endorsement in the

2018 Policy states in relevant part:

> **Contracting, Installation, Service and Repair General Liability Extended ElitePac® Endorsement**
>
> *       *       *
>
> **THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**
>
> This endorsement modifies insurance provided under the following:
>
> > COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.
>
> **1.      BLANKET ADDITIONAL INSUREDS**
>
> *       *       *
>
> > **b.      Completed Operations**
> >
> > > **SECTION II — WHO IS AN INSURED** is amended to include as an additional insured any person or organization you have agreed in a written contract, written agreement, or written permit to add as an additional insured on your policy, but only with respect to their liability arising out of "your work" performed under that contract, agreement, or permit and included in the "products-completed operations hazard" when that contract, agreement, or permit requires the additional insured be added with respect to liability arising out of "your work" performed under that contract, agreement, or permit and included in the "products-completed operations hazard". If the written contract, written agreement, or written permit does not require that the additional insured be added with respect to liability arising out of "your work" performed under that contract, agreement, or permit and included in the "products-completed operations hazard", then **SECTION II — WHO IS AN INSURED** is amended to include as an additional insured any person or organization you have agreed in a written contract, written agreement, or written permit to add as an additional insured on your policy, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by "your work" performed under that contract, agreement, or permit and included in the "products-completed operations hazard".
> >
> > **c.**      The coverages provided in Paragraphs **a.** and **b.** do not apply unless the written contract or written agreement has been executed (executed means signed by the named insured) or written permit

issued prior to the "bodily injury", "property damage" or "personal and advertising injury".[1]

36.    Coverage for an additional insured under each Blanket Additional Insured Endorsement is subject to the following exclusion:

**d.    Exclusions**

*      *      *

**(2)**    With respect to the insurance afforded to these additional insureds under… **b. Completed Operations**, the following is added to **2. Exclusions** under **SECTION I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

This insurance does not apply to:

"Bodily injury," "property damage," or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

**(a)**    The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)**    Supervisory, inspection, architectural or engineering activities.

37.    The Policies' CGL coverage also each contain the following exclusions of general applicability:

**2.    Exclusions**

This insurance does not apply to:

*      *      *

**b.    Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

---

[1] While the 2019 Policy contains an updated Blanket Additional Insured Endorsement, the updated endorsement contains the same or substantially similar language in all material respects.

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

\* \* \*

**k.** **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.** **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.** **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

38.    The Policies' CGL coverage each contain an "other insurance" provision. The 2018

Policy states:

**4.** **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a.** **Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b.    Excess Insurance**

**(1)**    This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of **Section I — Cover-age A — Bodily Injury And Property Damage Liability.**

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)**    When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)**    When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)**    We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess

-14-

of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c.    Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, which-ever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

39.    The Blanket Additional Insured Endorsements modify the Selective Policies' other insurance provision with respect to coverage provided by such endorsement as follows:

**e.    Conditions**

With respect to the insurance afforded to these additional insureds under **a. Ongoing Operations** and **b. Completed Operations** the following is added to Paragraph **4. Other Insurance, a. Primary** Insurance under **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS:**

This insurance is primary and will not contribute with any other insurance available to an additional insured under this coverage part provided that:

**(1)**    The additional insured is a Named Insured under such other insurance.

**(2)**    You have agreed in a written contract, written agreement or written permit to include that additional insured on your General Liability policy on a primary and/or non-contributory basis.

40.    Under the terms of the Selective Policies' CGL coverage, KBE is entitled to coverage as an additional insured: (a) only if CFC entered into a written contract with KBE under which CFC agreed to add KBE as an additional insured to CFC's Policies, (b) only with respect to claims asserted by Wakefern seeking recovery of money damages because of "property damage" arising out of CFC's work performed under the Subcontract and included in the "products-completed operations hazard," and (c) subject to all other terms, conditions, and exclusions of the Policies.

41.     The Selective Policies do not provide coverage to KBE as an additional insured, or otherwise, for KBE's own affirmative claims. Selective's duty to defend an insured is limited to the defense of a "suit" seeking damages from an insured because of "bodily injury" or "property damage" to which the Policies apply.

42.     The Selective Policies do not provide coverage to KBE for KBE's liability for loss or damage that does not constitute "property damage" caused by an "occurrence."

43.     The Selective Policies do not provide coverage to CFC for loss or damage to CFC's own product or work.

44.     The Selective Policies do not provide coverage to KBE for loss or damage to CFC's own product or work.

45.     The Selective Policies do not provide coverage to CFC for loss or damage to "impaired property" arising out of a defect or deficiency in CFC's product or work.

46.     The Selective Policies do not provide coverage to KBE for loss or damage to "impaired property" arising out of a defect or deficiency in CFC's product or work.

47.     The Selective Policies do not provide coverage to KBE for its liability to Wakefern for damages or litigation expense resulting from a right of recovery conferred by the Wakefern-KBE Contract or KBE's breach of an obligation assumed in the Wakefern-KBE Contract that are not otherwise imposed by law.

48.     The Selective Policies do not provide coverage to KBE if prior to the inception of the subject Policy, any insured knew that the claimed "property damage" had occurred, in whole or in part.

49.     The Selective Policies do not provide coverage to KBE for any liability because of loss or damage to property that does not arise from CFC's work performed under the Subcontract.

50.     The Selective Policies do not provide coverage to KBE for any liability because of loss or damage to property caused by the negligence of KBE that does not also arise from CFC's work performed under the Subcontract.

51.     The Selective Policies do not provide coverage to KBE for any liability because of loss or damage to property caused by the negligence of KBE's other subcontractors that does not also arise from CFC's work performed under the Subcontract.

52.     The Selective Policies do not provide coverage to KBE for any liability because of loss or damage to property arising out of the rendering of, or failure to render, professional architectural, engineering or surveying services, even if such loss or damage also arises out of CFC's work performed under the Subcontract.

### KBE's Tender to Selective, Selective's Defense Subject to a Reservation of Rights, and the Parties Dispute Over Coverage

53.     KBE tendered Wakefern's Counterclaims to Selective seeking coverage under the Selective Policies as an additional insured. KBE demanded that Selective defend and indemnify KBE against all of the claims asserted in Wakefern's Counterclaims. KBE additionally demanded that Selective pay for the legal fees necessary for KBE to pursue its original, affirmative claims against Wakefern.

54.     Selective investigated KBE's tender and agreed to defend KBE against Wakefern's Counterclaims subject to a complete reservation of rights.

55.     Among other things, Selective reserved the right to deny coverage for indemnification of KBE against any settlement or judgment in the Underlying Lawsuit.

56.     Selective has since been providing a defense to KBE against Wakefern's Counterclaims in the Underlying Lawsuit.

57.    Selective, however, denied KBE's request that Selective fund KBE's affirmative claims against Wakefern asserted in KBE's own complaint in the Underlying Lawsuit. KBE has been paying for its legal fees and costs associated with pursuing those claims.

## COUNT I – DECLARATORY JUDGMENT
### (Duty to Defend – KBE's Legal Fees Suing Wakefern)

58.    Selective incorporates by reference each of the preceding paragraphs 1 through 57 as if fully set forth herein.

59.    KBE initiated the Underlying Lawsuit against Wakefern seeking to recover sums that KBE contends it is owed for the work it performed on the Project.

60.    Wakefern has asserted Counterclaims against KBE in the Underlying Lawsuit.

61.    Subject to its reservation of rights, Selective has agreed to provide, and has been providing, a defense for KBE against Wakefern's Counterclaims.

62.    Selective has denied any obligation to fund KBE's pursuit of its affirmative claims asserted in its own complaint against Wakefern in the Underlying Lawsuit.

63.    The Selective Policies provide that Selective "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies" and that Selective "will have the right and duty to defend the insured against any 'suit' seeking those damages."

64.    KBE's claims against Wakefern as asserted in its complaint in the Underlying Lawsuit are not a "suit" seeking to recover damages from KBE because of "bodily injury" or "property damage" to which the Selective Policies apply.

65.    KBE's affirmative claims against Wakefern seek an additional $332,903.94 from Wakefern, which, KBE contends, is due and payable under the Wakefern-KBE Contract for services rendered to Wakefern by KBE.

-18-

66.     KBE maintains, however, that under the Selective Policies, Selective is obligated to pay for KBE's legal fees and costs in pursuing its claims against Wakefern in the Underlying Lawsuit.

67.     An actual and justiciable controversy exists between Selective and KBE concerning their respective rights and liabilities under the Selective Policies with regard to whether Selective has an obligation to pay for KBE's legal fees and costs in pursuing its claims against Wakefern in the Underlying Lawsuit.

68.     Selective is entitled to a judgment declaring that the Selective Policies' terms do not obligate Selective to pay for KBE's legal fees and costs in pursuing its claims against Wakefern in the Underlying Lawsuit.

### COUNT II – DECLARATORY JUDGMENT
### (Duty to Indemnify – Damage or Deficiencies in CFC's Own Work)

69.     Selective incorporates by reference each of the preceding paragraphs 1 through 57 as if fully set forth herein.

70.     Wakefern's Counterclaims against KBE in the Underlying Lawsuit seek to recover for defects and deficiencies in CFC's own work. Among other things, Wakefern alleges that the concrete floor installed by CFC does not conform to the specifications and requirements of the Wakefern-KBE Contract and otherwise suffers from defects in workmanship.

71.     Under the terms of the Selective Policies, and subject to all of those terms, Selective is only obligated to indemnify an insured for legal liability because of "property damage" caused by an "occurrence."

72.     Under the terms of the Selective Policies, defects and deficiencies of CFC's own work do not constitute "property damage" caused by an "occurrence" and, in any event, the Selective Policies otherwise preclude coverage for such liability.

73.    Exclusions k. of the Selective Policies' CGL coverage part precludes coverage for loss or damage to CFC's own product that arises out of such product, or any part of it, including any defects or deficiencies in the product.

74.    Exclusions l. of the Selective Policies' CGL coverage part precludes coverage for loss or damage to CFC's own work at the Project that arises out of such work, or any part of it, including any defects or deficiencies in the work.

75.    Exclusion m. of the Selective Policies' CGL coverage part precludes coverage for loss or damage to "impaired property" that arises out of a defect, deficiency or inadequacy in CFC's own product or work.

76.    Accordingly, Selective has reserved the right to deny coverage for that part of any settlement or judgment on Wakefern's Counterclaims on account of KBE's liability for loss or damage to CFC's own product, own work, or to "impaired property" arising out of defects or deficiencies in such product or work that CFC performed under the Subcontract.

77.    KBE maintains, however, that as an additional insured, Selective is obligated to indemnify KBE for any legal liability arising out of defects or deficiencies in the work that CFC performed under the Subcontract.

78.    An actual and justiciable controversy exists between Selective and KBE concerning their respective rights and liabilities under the Selective Policies with regard to whether Selective has an obligation to indemnify KBE for any liability that KBE might incur for loss or damage to CFC's own product, own work, or to "impaired property" arising from any defects or deficiencies in such product or work that CFC performed under the Subcontract.

79.    Selective is entitled to a judgment declaring that the Selective Policies' terms do not obligate Selective to indemnify KBE for liability KBE might incur for loss or damage to CFC's

own product, own work, or to "impaired property," including costs associated with any repair or replacement of such product, work or "impaired property," arising from any defects or deficiencies in the product or work that CFC performed under the Subcontract.

## COUNT III – DECLARATORY JUDGMENT
### (Duty to Indemnify – Liability Based On The Wakefern-KBE Contract)

80.     Selective incorporates by reference each of the preceding paragraphs 1 through 57 as if fully set forth herein.

81.     Under the terms of the Selective Policies, and subject to all of those terms, Selective is only obligated to indemnify an insured for those sums an insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which the Policies apply.

82.     Under the terms of the Selective Policies, and subject to all of those terms, Selective has no other obligation or liability to pay sums or perform acts unless the Supplementary Payments provisions explicitly provide coverage.

83.     KBE is not entitled to coverage as an additional insured, or otherwise, for sums it must pay as damages, or for incidental litigation expense to which Wakefern may be entitled, based on a term of the Wakefern-KBE Contract or the breach of an obligation KBE assumed in the Wakefern-KBE Contract that is not otherwise imposed by law.

84.     Accordingly, Selective has reserved the right to deny coverage for that part of any settlement or judgment on Wakefern's Counterclaims on account of KBE's liability based on the terms of the Wakefern-KBE Contract or for breach of an obligation KBE assumed in the Wakefern-KBE Contract.

85.     KBE disputes Selective's position.

86.     An actual and justiciable controversy exists between Selective and KBE concerning their respective rights and liabilities under the Selective Policies with regard to whether Selective

has an obligation to indemnify KBE for its liability based on the terms of the Wakefern-KBE Contract or the breach of an obligation KBE assumed in the Wakefern-KBE Contract that is not otherwise imposed by law.

87.    Selective is entitled to a judgment declaring that the Selective Policies' terms do not obligate Selective to indemnify KBE for its liability based on the terms of the Wakefern-KBE Contract or the breach of an obligation KBE assumed in the Wakefern-KBE Contract that is not otherwise imposed by law.

## COUNT IV – DECLARATORY JUDGMENT
### (Duty to Defend and Indemnify – Legal Liability For A Known Loss)

88.    Selective incorporates by reference each of the preceding paragraphs 1 through 57 as if fully set forth herein.

89.    Wakefern's Counterclaims against KBE in the Underlying Lawsuit allege that shortly after Wakefern first observed signs of defective and faulty workmanship in the concrete floor, Wakefern notified KBE of such defects.

90.    This notice to KBE allegedly occurred between May and September 2019.

91.    Under the terms of the 2019 Policy, and subject to all of those terms, coverage is only available to the extent no insured knew the claimed defects and damage had occurred, in whole or in part, prior to the inception of the 2019 Policy on November 8, 2019.

92.    Under the terms of the 2019 Policy, KBE is not entitled to coverage as an additional insured, or otherwise, because KBE knew of Wakefern's claimed defects and damage by September 2019, prior to the inception of the 2019 Policy on November 8, 2019.

93.    Accordingly, Selective has reserved the right to deny coverage under the 2019 Policy because KBE knew of Wakefern's claimed defects and damage prior to the inception of the 2019 Policy.

94.     KBE disputes Selective's position.

95.     An actual and justiciable controversy exists between Selective and KBE concerning their respective rights and liabilities under the 2019 Policy with regard to whether KBE had knowledge of Wakefern's claimed defects and damage prior to the inception of the 2019 Policy.

96.     Selective is entitled to a judgment declaring that the 2019 Policy's terms do not obligate Selective to defend or indemnify KBE against Wakefern's Counterclaims in the Underlying Lawsuit when KBE had knowledge of Wakefern's claimed defects and damage prior to the inception of the 2019 Policy.

## COUNT V – DECLARATORY JUDGMENT
### (Duty to Indemnify – Legal Liability For Property Damage That Does Not Arise Out Of CFC's Work)

97.     Selective incorporates by reference each of the preceding paragraphs 1 through 57 as if fully set forth herein.

98.     Wakefern's Counterclaims against KBE in the Underlying Lawsuit seek to recover for defects and deficiencies in work not performed by CFC and for alleged property damage that does not arise from CFC's work.

99.     Under the terms of the Selective Policies, and subject to all of those terms, KBE only qualifies as an additional insured on account of its liability for covered loss or damage to property that arises from work that CFC performed under the Subcontract.

100.    KBE is not entitled to coverage as an additional insured, or otherwise, for its liability for loss or damage to property that arises from KBE's own negligence or the negligence of KBE's other subcontractors, provided such loss or damage to property did not also arise from work that CFC performed under the Subcontract and is otherwise covered by the Policies.

-23-

101.    Accordingly, Selective has reserved the right to deny coverage for that part of any settlement or judgment on Wakefern's Counterclaims on account of KBE's liability because of loss or damage to property that does not arise from work that CFC performed under the Subcontract.

102.    KBE maintains, however, that its actions or inactions did not cause or contribute to Wakefern's claimed damages and that all of Wakefern's claimed damages arose from the work that CFC performed under the Subcontract. Therefore, according to KBE, Selective is obligated to indemnify KBE for any liability arising from Wakefern's Counterclaims.

103.    An actual and justiciable controversy exists between Selective and KBE concerning their respective rights and liabilities under the Selective Policies with regard to whether Selective has an obligation to indemnify KBE for any liability that KBE might incur on account of loss or damage to property that does not arise from work that CFC performed under the Subcontract.

104.    Selective is entitled to a judgment declaring that the Selective Policies' terms do not obligate Selective to indemnify KBE for any liability that KBE might incur on account of loss or damage to property that does not arise from work that CFC performed under the Subcontract.

### COUNT VI – DECLARATORY JUDGMENT
### (Duty to Indemnify – Legal Liability For Property Damage
### Arising Out of Professional Services)

105.    Selective incorporates by reference each of the preceding paragraphs 1 through 57 as if fully set forth herein.

106.    Under the terms of the Selective Policies, and subject to all of those terms, KBE does not qualify as an additional insured on account of its liability because of loss or damage to property arising out of the rendering of, or the failure to render, any professional architectural, engineering, or surveying services on the Project.

-24-

107.    KBE is not entitled to coverage as an additional insured for sums it must pay as damages on account of liability for loss or damage to property arising out of the rendering of, or failure to render, any professional architectural, engineering, or surveying services by KBE, CFC, or anyone else, including but not limited to such architectural, engineering, surveying, or design services associated with the walker ducts, trench-type underfloor raceway, and the concrete floor.

108.    KBE is not entitled to coverage as an additional insured for sums it must pay as damages on account of liability for loss or damage to property arising out of the rendering of, or failure to render, any professional architectural, engineering, or surveying services, even if such loss or damage also arises out of work that CFC performed under the Subcontract.

109.    Accordingly, Selective has reserved the right to deny coverage for that part of any settlement or judgment on Wakefern's Counterclaims on account of KBE's liability because of loss or damage to property arising out of the rendering of, or failure to render, any professional architectural, engineering, or surveying services.

110.    KBE disputes Selective's position.

111.    An actual and justiciable controversy exists between Selective and KBE concerning their respective rights and liabilities under the Selective Policies with regard to whether Selective has an obligation to indemnify KBE for any liability that KBE might incur on account of loss or damage to property arising out of the rendering of, or failure to render, any professional architectural, engineering, or surveying services, even if such loss or damage also arises out of work that CFC performed under the Subcontract.

112.    Selective is entitled to a judgment declaring that the Selective Policies' terms do not obligate Selective to indemnify KBE for any liability that KBE might incur on account of loss or damage to property arising out of the rendering of, or failure to render, any professional

architectural, engineering, or surveying services, even if such loss or damage also arises out of work that CFC performed under the Subcontract.

## COUNT VII – DECLARATORY JUDGMENT
### (Alternatively As To Duty to Defend and to Indemnify – Other Insurance)

113.    Selective incorporates by reference each of the preceding paragraphs 1 through 57 as if fully set forth herein.

114.    Wakefern's Counterclaims against KBE in the Underlying Lawsuit seek to recover for defects and deficiencies in work not performed by CFC, for alleged property damage that does not arise from work that CFC performed under the Subcontract, and for alleged property damage that is excluded by the Selective Policies.

115.    Under the terms of the Selective Policies, and subject to all of those terms, Selective only has a primary duty to defend and indemnify an additional insured without a right of contribution against other available insurance of that additional insured, provided the additional insured is a Named Insured under such other insurance, among other requirements.

116.    Under the terms of the Selective Policies, and subject to all of those terms, Selective does not have a primary and non-contributory duty to defend and indemnify an additional insured if other insurance available to the additional insured does not list the additional insured as a Named Insured.

117.    Coverage under the Selective Policies applies on an excess or co-primary basis with respect to other insurance that is also available to KBE for Wakefern's Counterclaims that does not list KBE as a Named Insured.

118.    Under the terms of the Selective Policies, and subject to all of those terms, Selective does not have a duty to defend or indemnify an additional insured, let alone a primary and non-contributory duty, if coverage is not available to the additional insured under the Selective Policies.

-26-

119.    Under the terms of the Selective Policies, and subject to all of those terms, Selective has no duty to indemnify KBE with respect to any liability imposed on KBE that does not arise from work that CFC performed under the Subcontract, or which does arise from CFC's work but that is excluded by the Policies.

120.    KBE's own insurers have an independent and primary duty to defend and indemnify KBE against claims seeking coverage for loss or damage arising out of KBE's own negligence.

121.    Accordingly, other insurance available to KBE with respect to the Counterclaims have an independent and primary obligation to defend and indemnify KBE thereby rendering Selective's duty to defend and indemnify KBE under the Selective Policies as co-primary with, or excess of, such other insurance.

122.    KBE disputes Selective's position.

123.    An actual and justiciable controversy exists between Selective and KBE concerning their respective rights and liabilities under the Selective Policies with regard to Selective's duty to defend and indemnify KBE against Wakefern's Counterclaims in the Underlying Lawsuit and the coverage obligations of other insurance available to KBE.

124.    Selective is entitled to a judgment declaring that the Selective Policies' terms do not obligate Selective to defend or indemnify KBE against Wakefern's Counterclaims in the Underlying Lawsuit on a primary and non-contributory basis.

### COUNT VIII – DECLARATORY JUDGMENT
**(Duty to Defend and Indemnify – Applicability of Commercial Umbrella Coverage)**

125.    Selective incorporates by reference each of the preceding paragraphs 1 through 124 as if fully set forth herein.

126.    In addition to CGL coverage, the Selective Policies contain a Commercial Umbrella coverage part. The Commercial Umbrella Insuring Agreements provide as follows:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this Coverage Part. The words "we", "us" and "our" refer to the Company providing this insurance.
>
> The word "insured" means any person or organization qualifying as such under **Section II – Who Is An Insured.**
>
> Other words and phrases that appear in quotation marks have special meaning. Refer to **Section V – Definitions**.
>
> **SECTION I — COVERAGES**
>
> **A.    Insuring Agreement**
>
> **1.**    We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" that the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages when the "underlying insurance" does not provide coverage or the limits of the "underlying insurance" have been exhausted… However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

127.    Under the terms of the Selective Policies, and subject to all of those terms, the Commercial Umbrella coverage part will only respond when "underlying insurance" does not provide coverage, or the limits of "underlying insurance" have been exhausted.

128.    At present, the Selective Policies' Commercial Umbrella coverage part does not respond to any claim for coverage KBE might assert in connection with Wakefern's Counterclaims in the Underlying Lawsuit because Selective is defending KBE under the Policies' CGL coverage, subject to a complete reservation of rights, and the limits of such underlying insurance have not been exhausted.

-28-

129.     KBE has not sought coverage from the Selective Policies' Commercial Umbrella coverage part as an additional insured, or otherwise.

130.     However, to the extent Selective prevails on one or more Counts set forth in this complaint, KBE may seek coverage under the Policies' Commercial Umbrella coverage part as an additional insured.

131.     The Selective Policies' Commercial Umbrella coverage contains many of the same or substantially similar terms, conditions, and exclusions that Selective relies upon herein as its bases for declaratory relief in Counts I through VI under the Policies' CGL coverage.

132.     KBE disputes Selective's positions with respect to the Policies' CGL coverage.

133.     Accordingly, Selective has reserved, and continues to reserve, all rights and defenses with respect to the Selective Policies, including with respect to the Policies' Commercial Umbrella coverage.

134.     An actual and justiciable controversy exists between Selective and KBE concerning their respective rights and liabilities under the Selective Policies with regard to whether and to what extent Selective has an obligation to defend and indemnify KBE for any liability that might result from Wakefern's Counterclaims under the CGL and Commercial Umbrella coverage parts.

135.     To the extent Selective is entitled to declaratory relief on Counts I through VI under the Policies' CGL coverage, Selective is also entitled to declaratory relief with respect to the Policies' Commercial Umbrella coverage.

## PRAYER FOR RELIEF

WHEREFORE, for the reasons set forth above, the Plaintiff Selective Insurance Company of South Carolina prays for judgment as follows:

A. With respect to Count I, a declaration that Selective is not obligated under the Selective Policies, or otherwise, to pay for KBE's legal fees and costs in pursuing its claims against Wakefern in the Underlying Lawsuit;

B. With respect to Count II, a declaration that Selective is not obligated under the Selective Policies, or otherwise, to indemnify KBE for any legal liability that KBE might incur for loss or damage to CFC's own product, work, and "impaired property," including all costs associated with the repair or replacement of such product, work, or "impaired property," arising out of any defects, deficiencies, or faulty workmanship in such product or work that CFC performed under the Subcontract;

C. With respect to Count III, a declaration that Selective is not obligated under the Selective Policies, or otherwise, to indemnify KBE for liability based on the terms of the Wakefern-KBE Contract or the breach of an obligation KBE assumed in the Wakefern-KBE Contract that is not otherwise imposed by law;

D. With respect to Count IV, a declaration that Selective is not obligated under the 2019 Policy to defend or indemnify KBE against Wakefern's Counterclaims in the Underlying Lawsuit because KBE had knowledge of Wakefern's claimed defects and damage prior to the inception of the 2019 Policy;

E. With respect to Count V, a declaration that Selective is not obligated under the Selective Policies, or otherwise, to indemnify KBE for any legal liability that KBE might incur on account of property damage that does not arise from work that CFC performed under the Subcontract;

F. With respect to Count VI, a declaration that Selective is not obligated under the Selective Policies, or otherwise, to indemnify KBE for any legal liability

-30-

that KBE might incur on account of property damage arising out of the rendering of, or failure to render, any professional architectural, engineering, or surveying services, even if such property damage also arises out of work that CFC performed under the Subcontract;

G. Alternatively, with respect to Count VII, a declaration that Selective is not obligated under the Selective Policies, or otherwise, to defend or indemnify KBE against Wakefern's Counterclaims in the Underlying Lawsuit on a primary and non-contributory basis;

H. With respect to Count VIII, to the extent Selective is entitled to a declaration on Counts I through VI with regard to the Policies' CGL coverage, Selective is also entitled to a declaration with regard to the Policies' Commercial Umbrella coverage;

I. With respect to all Counts, a judgment awarding Selective its costs in this action; and

J. With respect to all Counts, a judgment awarding Selective such other relief as this Court deems just and proper.

Dated: June 6, 2022                    Respectfully submitted,


                                       SELECTIVE INSURANCE COMPANY
                                       OF SOUTH CAROLINA

                                       By  */s/ Joseph K. Scully*
                                          Joseph K. Scully
                                          Jason E. Rusche
                                          Day Pitney LLP
                                          242 Trumbull Street
                                          Hartford, CT 06103
                                          Tel.: (860) 275-0135
                                          Tel.: (860) 275-0136
                                          Fax: (860) 881-2478
                                          jkscully@daypitney.com
                                          jrusche@daypitney.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2022, a copy of the foregoing was filed electronically and will be provided to Defendant KBE Building Corporation's designated counsel via e-mail and via regular mail to the extent necessary to ensure proper service.

Jack G. Steigelfest
Howard, Kohn, Sprague & Fitzgerald, LLP
237 Buckingham St.
PO Box 261798
Hartford, CT 06126-1798
JGS@HKSFLaw.com


/s/ Joseph K. Scully
Joseph K. Scully